

No. 22-1016

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

LEVINE/SCHWAB PARTNERSHIP
D/B/A SCHWAB MULTIMEDIA LLC,

*Appellant*,

v.

FEDERAL COMMUNICATIONS COMMISSION,

*Appellee.*

---

On Appeal of an Order of the
Federal Communications Commission

---

# PETITION FOR HEARING EN BANC

---

William J. Schwab, Member
Levine/Schwab Partnership
d/b/a Schwab Multimedia LLC
P.O. Box 662
Hollywood, CA 90078
(818) 209-5531
donelliot@gmail.com

*Appellant (pro se)*

March 30, 2023

# PETITION FOR HEARING EN BANC

On behalf of Levine/Schwab Partnership d/b/a Schwab Multimedia LLC, I am hereby requesting an en banc hearing to review the March 3, 2023 decision in this case, with a now clearer emphasis on facts presented that may have not been apparent at the time, for reasons suggested in the following details:

This is a case of exceptional importance of a possible loss of a major market radio station in Los Angeles, California. This is unfortunately due to the confusion and misunderstanding of how information is misinterpreted by the court and other information curiously withheld by the FCC to you during the appeal hearing.

The court's decision seems to have been based on my "not having a site" or a lease of one when:

1) In the first place, a lease is not required by the FCC;

2) Only reasonable assurances are required by the FCC;

3) Verbal agreements for a lease would qualify;

4) In fact, I did have a lease and it was submitted in evidence, yet was somehow glossed over or not considered in the decision; and

5) Therefore, that point which seemed to be of importance in the decision is moot.

For clarification, I will now do a brief rundown of the confusion over the three transmitter sites in question, in chronological order.

**SITE ONE**

Our original transmitter site was at KWKW/Kalmenson Broadcasting 1330 AM where a partnering lease and revenue sharing arrangement was made to offset the cost of duplexing and rent. We had agreed on financial terms, which were finalized shortly prior to the grant of our CP, when suddenly, and without proper the notice required by the FCC to alert any affected parties in the coverage area, KABC, 790 AM Radio Los Angeles, who had sold the land under their site, made an unknown to me (silent) deal with Kalmenson taking "my" spot on their antennas. Engineering wise, the necessary additional filtering equipment required to accomplish this event to add an additional co-located station (me) if agreed upon, would now be in the prohibitive neighborhood of $500,000. And is an engineering nightmare in itself which a newly appointed chief engineer declined to proceed.

Causing me to immediately move on to…

**SITE TWO**

In seeking another site that could still reach Culver City and meet FCC minimum "city grade" requirements, we acquired a lease at the former KIIS AM abandoned site in Montecito Heights area of Los Angeles, which afforded everything we needed. Even the main tower was still intact with plenty of serviceable space in the building. It is very secure and coincidentally hosts the LA police and fire communications equipment. I secured a written lease there for 20 years.

Throughout the process various "informal objections" were filed independently without knowledge or consent of the owner by attorney, Dan Alpert, counsel for 1510 AM KSPA Intelli Broadcasting. I feel that these objections were basically recriminations for my not agreeing to being bought out by the previous owner of 1510 AM, Astor Communications. Mr. Astor has since passed, and the estate sold the license to Intelli, knowing that they were going to lose the site under the towers in a short time. The legal counsel and engineering remained to continue the fight protesting my license. I am aware that the truth to the underlying basis for their complaints is their desire to increase their power, which cannot happen if I exist. This is not fitting the definition of "standing" because it is hoping and praying for something that is a future event and not reality today.

These objections were a key impediment to my progress. Informal objections are meant by the FCC to be used as a channel for members of the general public to facilitate legitimate complaints against a station. My protester, Intelli, subverts this intent and is an abuse of the privilege by using it to their advantage as a tool to destroy and eliminate a competitive station.

It is important to understand this background. It sets the stage for the beginning of a cat and mouse and "whack-a-mole" contest for Intelli to keep me busy defending and reacting to their complaints, which, in any other area I can see them as vexatious litigants. They should have been barred from additional protests.

The goal was to continue to exhaust my tolling time, as the time does not stop for us to resolve these complaints, and they knew and took advantage of this unethical strategy. They hoped I would run out of time, money, or give up the process. I am 80 years old and have suffered a heart attack in the midst of these efforts. Clearly, then, for a competitor to use the tool of "informal complaint" against another station in this manner, is totally deplorable.

One of the "informal protests" to our new 20-year lease at the KIIS Montecito Heights site number two was not that we caused their station interference but rather that we were proposing a deficient lower signal that failed to meet the FCC minimum "city-grade" coverage requirements to Culver City. They claimed we only had 79% of the required 80% minimum. A 35-year-old theoretical study of radiation patterns from Montecito to Culver City found in FCC files was cited by Intelli's engineer which was a basis for their next complaint.

This is the point at which with six weeks left on my tolling, I determined that I could've re-measured this study on more current state-of-the-art technical equipment that could possibly turn the tide in my favor and break the 80% requirement. This required an engineering study that could have taken several weeks and with time running on the tolling. I moved on to…

**SITE THREE**

It was more prudent to take action to lease the 2 1/2 acres of land I located and had surveyed at Fox Hills Mall in Culver City. That way there could be no question about the signal strength and also no question about interference to a station like the complainer Intelli's KSPA from the totally different market of Ontario, California.

These confusing events occurred so quickly I am sure that it was challenging even for counsel to keep up with timely and confusing procedural filings with the commission. We were then faced, not only with fires in the LA area but Covid causing the city of LA and Culver City to mandate closings that prohibited our readiness to construct.

These are all "acts of God" in situations beyond our control, unquestionably. The FCC had granted us six months tolling because of Covid, and only a couple of days into the grant, yet another informal complaint was filed by Intelli, claiming tolling for me should not have been allowed, notwithstanding the fact that the FCC granted it to every other station in the USA that asked for it. There's something here that I believe to be an unequal application of the law.

**NO LEASE REQUIRED, AND YET...**

To reiterate, an important oversight here... The FCC during the November hearing knew very well, and yet remained silent on not requiring a lease for a site in

the first place, regardless of the fact that I indeed HAD one, and then continued to let the idea spiral out of control to the degree that it became a negative deciding factor by the judges!

And so, what I ask of the court is to please consider setting aside this misunderstanding due to the extreme confusion in this interpretation of many of the pivotal facts in this case and let us move on to cooperate with the FCC in putting this station on the air. It will reach 8.2 million people in the daytime coverage area in Los Angeles and about 6.5 million at night. If it were to disappear it would be a great loss of public service, local community coverage, disaster services, and the station's participation in the FEMA Emergency Alert System: the "EAS."

As you may know, the FCC does not hand out refunds in these auctions either in payment, or for any of the mounting legal fees, even when they may have granted an "unbuildable facility."

After my win in the FCC Spectrum auction, I was practically the FCC's "Poster Boy" for their extensively touted and implemented AM Revitalization" program and I would be the last AM station ever granted in the history of the United States. I am a sole proprietor. I'm not even a mom and pop. I'm barely a "pop."

I am a veteran broadcaster having begun in high school and spending my career with successful stations from DC to LA over the years. I have invested the majority of my life savings in this venture. One could not find a better candidate

with my expertise in engineering, programming, and sales to bring this station to life.

The FCC of point of view is that they like qualified operators. It will be at no cost to the Commission to allow us to proceed, and if permitted the station will go on to prove itself as the shining star of the city. And we will be the ribbon tied onto the last AM ever granted in the US.

A major goal of the FCC right now is to see Digital Radio Broadcasting implemented on AM Since that is the mode of transmission of choice for me, we would be the only fully digital station in the market, to my knowledge. This is because other already established stations fear losing their existing analog audience by switching to digital. We, however, start at Ground Zero with no audience, and therefore have nothing to lose. This new digital mode is the darling of the high-tech community these days.

If this station were to fail after a court and FCC decision in my favor, it should be only from my own fault, and not one because of a tiny procedural snafu in this legal quagmire.

When the big guys don't play by the rules, it necessitates that "the little guy" in this case, implore the court for what they are historically known to be the best at… To be "The Great Equalizer" in David versus Goliath situations.

Please help me restore that balance with the Court's sense of wisdom and fairness in this case.

Dated: March 30, 2023              Respectfully submitted,

*/s/ William J. Schwab*
William J. Schwab, Member
Levine/Schwab Partnership
d/b/a Schwab Multimedia LLC
P.O. Box 662
Hollywood, CA 90078
(818) 209-5531
donelliot@gmail.com

*Appellant (pro se)*

**CERTIFICATE OF COMPLIANCE**

I, William J. Schwab, hereby certify that this petition contains 1,868 words and was prepared using Microsoft Word.

*/s/ William J. Schwab*
William J. Schwab

## CERTIFICATE OF SERVICE

I, William J. Schwab, hereby certify that, on March 30, 2023, I served this petition on the Federal Communications Commission by email at LitigationNotice@fcc.gov.

*/s/ William J. Schwab*
William J. Schwab





UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

MAR 3 1 2023

RECEIVED

Levine/Schwab Partnership d/b/a Schwab Multimedia
LLC v. Federal Communications Commission
Case No. 22-1016
Petition for Hearing En Banc

DC circuit court
333 Constitution Ave
Washington, DC
20001